IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. CR 12-0128 JB

ANTONIO MUNOZ-HERNANDEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order , filed June 28, 2012 (Doc. 217)("Appeal").  The Court held a detention hearing on July 18, 2012. The primary issues are: (i) whether Plaintiff United States of America has proven by a preponderance of the evidence that Defendant Antonio Munoz-Hernandez is a flight risk, and that no condition or combination of conditions would reduce that risk to an acceptable level; and (ii) whether the United States has proven by clear-and-convincing evidence that Munoz-Hernandez is a danger to the community, and that no condition or combination of conditions would reduce that danger to an acceptable level.  The Court will affirm the Honorable Robert Hayes Scott, United States Magistrate Judge's Order Denying Defendant's Motion for Bail, filed June 20, 2012 (Doc. 210), because the Court believes that no condition or combination of conditions would reasonably assure his appearance or the safety of the community.

## FACTUAL BACKGROUND

Munoz-Hernandez was born in January, 1974, in Chihuahua, Mexico.  See Addendum to Bail Report at 2, disclosed June 18, 2012 ("Report").  He is one of five children.  See id. at 2.  Both Munoz-Hernandez's siblings and parents, with the exception of one brother living in Albuquerque,

New Mexico, continue to reside in Mexico.  See id. at 1.  Munoz-Hernandez entered the United

States at the age of seventeen, and has lived in Albuquerque ever since.  See id. at 2.  Munoz-

Hernandez obtained permanent resident status in 2000.  See Report at 2.  Munoz-Hernandez has

been in a relationship with Cindy Munoz for the last five years, and they have a four-year old son.

See Report at 2. Munoz-Hernandez also has three other children from his marriage to Jennifer

Munoz.  See Report at 2.  Munoz-Hernandez and J. Munoz have been separated for seven years.

See Report at 2.  Munoz-Hernandez also has a three-year-old son with Valerie Garcia, of Chihuahua

Mexico.  See Report at 2.  According to Munoz-Hernandez, he provides financial support to all of

his children.  See Report at 2.  Munoz-Hernandez last traveled to Mexico one and a half years ago

to visit his infant son.  See id. at 2.

Munoz-Hernandez did not graduate from high school and did not obtain a General

Equivalency Diploma.  See Report at 2.  Munoz-Hernandez was employed in construction from

2001 through 2008, and in automobile repair and automobile painting from 2003 through December

2011.  See Report at 2.  Munoz-Hernandez does not report any assets.  See Report at 2.  Munoz-

Hernandez reports monthly expenses of $1,220 for rent, utilities, and groceries.  See Report at 2.

Munoz-Hernandez reports being in good physical and mental health, and is not under the care of a

physician.  See Report at 3.  On the advice of counsel, Munoz-Hernandez declined to discuss alcohol

and/or drug use.  See id. at 3.  Munoz-Hernandez has been charged with multiple traffic violations,

and once with shoplifting.  See Report at 4-5.  Of those charges, he pled guilty to speeding twice,

and all remaining charges were dismissed.  See Report at 4.  Additionally, however, Munoz-

Hernandez has been charged with failure to appear fourteen times in connection to these criminal

charges and other traffic citations, and pled guilty to the failure-to-appear charges at least three

times.  See Report at 4-5.

## PROCEDURAL BACKGROUND

A federal grand jury handed down a twenty-nine count indictment on January 25, 2012. See Indictment (Doc. 2). Munoz-Hernandez was indicted in this case along with fourteen others. See Indictment. Munoz-Hernandez is charged in the following Counts: (i) Count 1 - conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; and (ii) Count 25 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b). See Indictment at 1-3, 8-9. With Count 1, Munoz-Hernandez faces imprisonment of ten years to life, and with Count 25, he faces four-years imprisonment. See Response to Defendant's Motion for Reconsideration, filed June 17, 2012 (Doc. 202)("Response"). The United States additionally seeks forfeiture of "at least $15,000,000 in U.S. currency" from Munoz-Hernandez and his co-Defendants. Indictment at 11.

On June 18, 2012, United States Probation & Pretrial Services ("Pretrial Services") disclosed its Report regarding the appropriateness of pretrial release. It recommended pretrial detention based on Munoz-Hernandez' risk of flight for the following reasons: (i) lack of employment; (ii) prior failures to appear in court; (iii) use of other names and identifiers; (iv) past poor performance under community supervision and non-compliance with court orders; (v) possible deportation, if convicted; and (vi) ties to Mexico. See Report at 3. It recommended pretrial detention based on Munoz-Hernandez' danger to the community for the following reasons: (i) the nature of the alleged offense; and (ii) his arrest/conviction history. See Report at 3. On February 1, 2012, Judge Scott held a hearing whether to detain Munoz-Hernandez. See Clerk's Minutes of Arraignment/Detention at 1, filed February 1, 2012 (Doc. 88). At the hearing, Judge Scott found that: (i) there is a serious risk that Munoz-Hernandez will not appear; and (ii) there is a serious risk that Munoz-Hernandez will endanger the safety of another person or the community. See Detention Order Pending Trial at 2,

-3-

filed February 1, 2012 (Doc. 89).

On June 6, 2012, Munoz-Hernandez filed his Motion for Bail Review.  See Doc. 193 ("Motion").  Munoz-Hernandez "requests an order releasing him to the La Posada Halfway House [in Albuquerque], and requests a detention hearing to be scheduled at the Court's earliest convenience."  Motion at 1.  He asserted:

> The Government's evidence against Mr. Munoz-Hernandez is circumstantial based on a handful of ambiguous telephone calls over a very short period. There is no physical evidence against Mr. Munoz-Hernandez. Mr. Munoz Hernandez has no criminal history points and even if convicted is facing a relatively low sentencing range as compared to many of his released co-defendants.

Motion ¶ 1, at 1-2.  Munoz-Hernandez noted that, under 18 U.S.C. § 3142(f), "a detention hearing 'may be reopened . . . by the judicial officer at any time before trial if the judicial officer finds that information was not known to the movant at the time of the [initial] hearing,'" and contends that there are "several new circumstances that weigh in favor of release for Mr. Munoz-Hernandez." Motion ¶¶ 4-5, at 2 (quoting 18 U.S.C. § 3142(f)).  These new circumstances include: (i) the Court's designation of this case as complex will delay trial until at least May 2013; (ii) since the detention hearing, Munoz-Hernandez' son and his mother, C. Munoz, have moved back to New Mexico, and his other son, who was residing in Mexico, also relocated, resulting in all of his children residing in New Mexico; (iii) some of Munoz-Hernandez' failures to appear have mitigating circumstances, such as notices being sent to improper addresses, and continuances he misunderstood as having been granted; and (iv) that the Bernalillo County New Mexico Metropolitan Court ("Metropolitan Court") Records indicating his failures to appear were not available to his Counsel at the original detention hearing.  See Motion ¶¶ 6-10, at 3-4.  Munoz-Hernandez asserted that the Court must consider Munoz-Hernandez' history and characteristics, and must recognize that "his strongest ties are to New Mexico, where his five United States citizen children reside."  Motion ¶ 15 at 6-7.  He also

stated that his criminal history does not support detention, because he has never been arrested for, nor charged with a felony, and does not have any criminal misdemeanor convictions. See Motion ¶ 17, at 7. Munoz-Hernandez asserted that he has a long history of work as a self-employed automobile painter, and, "[w]hile he does not presently have employment, he will seek employment immediately upon release." Motion ¶ 20, at 8. Munoz-Hernandez argues that, in addition to the new evidence warranting a bail review hearing, "due process concerns also warrant re-examination of the detention order because pretrial confinement in this complex case with its lengthy pretrial track poses such a severe restriction on [his] freedom." Motion ¶ 21, at 8 (citing Peoples v. CCA Det. Ctrs., 422 F.3d 1090, 1106 (10th Cir. 2005)("Due Process requires that a pretrial detainee not be punished prior to a lawful conviction.")). Munoz-Hernandez thus requested that the Court release him "to the third party custody of the La Posada Halfway House." Motion at 10.

On June 17, 2012, the United States filed its Response to Defendant's Motion for Reconsideration. See Doc. 202 ("Response"). The United States "continues to believe that the defendant may pose both a flight risk and danger to the community or any other person, and therefore requests that this Court uphold its original order of detention in this matter." See Response at 1. It conceded, however, that Munoz-Hernandez' motion was properly before Judge Scott, because he presented new information that was not known at the detention hearing. See Response at 1. The United States asserted that, because Munoz-Hernandez is charged with drug trafficking, "a 'presumption of detention' arises that the defendant is a flight risk and a danger to the community." Response at 3 (quoting 18 U.S.C. § 3142(e)(3))(citing United States v. Villapudua-Quintero, 308 F. App'x 272, 273, (10th Cir. 2009)). It also contended that should Judge Scott determine the new information which Munoz-Hernandez presents "rebuts the presumption of detention . . . GPS monitoring as well as confinement with a curfew at the half-way-house should

be required [if he is released]." Response at 4-5.  The United States continued to argue, however, that Munoz-Hernandez cannot overcome the presumption of detention, because there is probable cause that he was involved in a complex drug trafficking conspiracy, and his ties to Mexico remain strong in light of him being a Mexican citizen and the fact that his blood relatives live in Mexico. It also contended that Judge Scott should not be persuaded to address the due-process argument that Munoz-Hernandez raised in his Motion, because there is no evidence that he has been subjected to any punishment while detained that implicates the due-process clause, and the issue is thus "not properly before th[e] Court."  Response at 5.  The United States therefore asserted that Judge Scott should continue to require Munoz-Hernandez' detention.

Judge Scott held a detention hearing on June 20, 2012.  Munoz-Hernandez began by explaining the new circumstances which should counsel Judge Scott to release him from detention. He first stated that his son and his son's mother and current partner, C. Munoz, along with all of his children are now in Albuquerque, leaving him no significant ties to Mexico.  See Federal Digital Tape Recorder at 1:45:01-12 (taken June 20, 2012) (Khalsa) ("FTR").  Munoz-Hernandez added that, because at the first hearing, this case was not yet a complex case, which it now is, the circumstances require Judge Scott to consider anew whether detention should continue when the first possible trial date is not until May 2013.  See FTR at 1:45:12-36 (Khalsa).  Munoz-Hernandez contended that, because thus far in discovery, the only evidence disclosed concerning his involvement in the conspiracy is, at best, "a small handful" of telephone calls involving Munoz-Hernandez, the trial evidence may show that he played only a minor role in this conspiracy, and, thus, the presumption that he is a flight risk should also not be as great in his case.  FTR at 1:45:36-47:10 (Khalsa).  In regards to his fourteen previous failures to appear for court, Munoz-Hernandez stated that, for his most recent failure to appear in 2010, he subsequently turned himself in to

authorities, using the walk-in process, which the Metropolitan Court has set up for persons with outstanding warrants, was given a re-hearing date at which he appeared, and the court dismissed the traffic violation charges.  See FTR at 1:47:10-48:28 (Khalsa).  For the second most recent failure to appear, the seven-year-old shoplifting charge, Munoz-Hernandez contended that there is an indication in the Metropolitan Court records that he tried to seek a continuance by sending a letter to the state court demonstrating that his employer had scheduled him to be out of town, and the records indicate there was "some sort of mix-up whether continuance had been granted."  FTR at 1:48:28-49:27 (Khalsa).  Munoz-Hernandez stated that after the warrant was issued in that case for his failure to appear, he appeared in court, and, pursuant to Metropolitan Court rules, the shoplifting charged was dismissed after his ninety-day compliance with the court's order.  See FTR 1:49:27-49 (Khalsa).

Munoz-Hernandez asserted that he is not a danger to community, as can be seen from the fact there is nothing in his history to indicate he is dangerous.  See FTR at 1:49:50-50:12 (Khalsa).  He stated that, since the beginning of the federal case, he has been compliant with law enforcement, including consenting to a search of his home.  See FTR at 1:50:12-30 (Khalsa). Munoz-Hernandez contended that there is nothing in his history, nor in the record, to show violence; he has  no criminal convictions, there is no evidence of alcohol use or violence, and, of his criminal charges, all are charges for traffic violations, with the exception of shoplifting.  See FTR at 1:50:30-51:02 (Khalsa).  He stated that he believes the evidence of his history is alone sufficient to overcome the flight risk presumption in 18 U.S.C. § 3142(e)(3) for drug trafficking conspiracy charges.  See FTR at 1:51:02-15 (Khalsa).  Munoz-Hernandez noted that, if the Court saw it fit to release him to the La Posada Halfway House, as he requests, he would be agreeable to the United States' recommendation for a GPS monitoring device.  See FTR at 1:51:05-55 (Khalsa). The Court asked if Munoz-Hernandez still

-7-

has family in Mexico, to which Munoz-Hernandez responded that he does have family there, but that he does not remain in contact with his family in Mexico. See FTR at 1:52:01-54:20 (Court, Khalsa).

The United States asserted that it stands by its recommendation for detention. See FTR at 1:54:48-55:05 (Hurtado). It stated that Munoz-Hernandez' family, his siblings and parents, still living in Mexico gives him strong ties there and also provides him the ability to flee, making him a substantial flight risk. See FTR at 1:55:05-32 (Hurtado). The United States reiterated that Munoz-Hernandez has fourteen failures to appear on his record, which the Court should find worrisome at the least. See FTR at 1:55:32-55 (Hurtado). Judge Scott asked the United States if it was correct that, under Count 1, if Munoz-Hernandez was found guilty, the sentencing range would be from ten years to life imprisonment. See FTR at 1:55:55-56:05 (Court). The United States responded that Judge Scott was correct. See FTR at 1:56:06 (Hurtado).

Judge Scott stated that it had considered Munoz-Hernandez' Motion, the Response, the pre-trial report and the addendum, and denied the motion. See 1:56:40-55 (Court). Judge Scott noted that, in his view, there has not been a significant change in circumstances or in the facts relating to Munoz-Hernandez' detention since the first hearing, and stated that he remains "overwhelmed by fourteen failures to appear," none of which, in his perspective, had been adequately explained. FTR at 1:56:55-57:39 (Court).

Judge Scott issued his Order Denying Defendant's Motion for Bail Review on June 20, 2012. See Doc. 210 ("Order Denying Review"). Judge Scott found: "Other than Ms. Munoz relocating in the United States . . . , there are no changes in Defendant's circumstances since his original detention hearing on February 1, 2012." Order Denying Review ¶ 7, at 2. Judge Scott also found that the "Defendant maintains strong ties to Mexico. His parents and three siblings reside in Mexico." Order Denying Review ¶ 5, at 2. Judge Scott noted that, after considering the factors set

-8-

forth in 18 U.S.C. § 3142(g), he concluded that Munoz-Hernandez should be detained, because he

failed to rebut the presumption that he is a flight risk and danger to the community.  See Order

Denying Review ¶¶ 9-10, at 2.

Munoz-Hernandez filed his Appeal on June 28, 2012, pursuant to 18 U.S.C. § 3145, moving

the Court to "conduct a hearing on the order of detention issued by the Honorable Robert Scott on

June 20, 2012, and Order his release on reasonable grounds."   Appeal at 1-2.  The Court held a

hearing on Munoz-Hernandez' Appeal on July 18, 2012.  Munoz-Hernandez stated that he did not

have anything additional to present to the Court other than what he had presented to Judge Scott at

the detention hearing and in the corresponding Motion.  See Transcript of Hearing at 2:13-14 (taken

July 18, 2012)(Khalsa)("Tr.").[1]  Munoz-Hernandez asserted that, if he were to be convicted in this

case, because the evidence against him consists of only six to nine telephone calls all in one day, he

would only be convicted as one of the "very, very minor players in this case."  Tr. at 3:1-6 (Khalsa).

He asserted that, although his record contains numerous failures to appear, any concern of him

failing to appear could be alleviated by putting an electronic monitoring device on him, noting that

the Court had already done so for some of his co-defendants.  See Tr. at 4:1-12 (Khalsa).  Munoz-

Hernandez stated that, should the Court decide to release him from detention, he could be gainfully

employed immediately, noting that he had already received an offer of employment since his arrest

-- although it had expired once he was detained rather than released -- and he would be able to

quickly obtain another offer of employment as an automobile painter.  See Tr. at 4:13-15 (Khalsa).

He  noted that he has substantial ties to Albuquerque, including a house that he owns, which his

partner, C. Munoz, was living until the water was turned off recently because of his detention.  See

_____

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original,
unedited version. Any final transcript may have slightly different page and/or line numbers.

Tr. at 4:15-24 (Khalsa).  Munoz-Hernandez stated:

> His failure to appear history, while significant, is in some ways explained by the fact that these are minor traffic tickets that sometimes he forgot about.  He always ultimately took care of them, and most of them were actually dismissed and he paid a fine for failing to appear in court.

Tr. at 6:6-10 (Khalsa).  He contended that he has no plans to flee to Mexico if released, because he is hoping to become a United States citizen when and if the charges are dismissed.  See Tr. at 6:12-14 (Khalsa).  Munoz-Hernandez admitted that he has ties to Mexico, but they are not strong ties, and should not prevent his overcoming the statutory presumption of being a flight risk.  See Tr. at 7:12-15 (Khalsa).  He concluded by noting that the factors in 18 U.S.C. § 3142(g) counsel in favor of releasing him from detention, and requiring a GPS tracking device if he is released to a halfway house can alleviate any concern the Court may have of his being a flight risk.  See Tr. at 7:24-8:20 (Khalsa).

The United States asked that the Court affirm Judge Scott's Order, which adopted Pretrial Services' recommendation, and find that there exists "no condition or combination of conditions that will [] assure the safety of the community and Mr. Munoz' appearance in court."  Tr. at 9:2-7 (Meyers).  The United States contended that, even if the only evidence against Munoz-Hernandez is the six to nine telephone calls that he made in connection with the drug trafficking, because he is charged as a member of the conspiracy, he is still facing a sentence of imprisonment from ten years to life.  See Tr. at 9:7-13 (Meyers).  Ten years to life is certainly enough to cause concern that Munoz-Hernandez, who is a citizen of Mexico and whose family still resides there, is a flight risk.  See Tr. at 9:14-17 (Meyers).  The United States noted that Pretrial Services recommended Munoz-Hernandez' detention without taking into account the statutory presumption that applies in this case, or the strength of the United States' evidence showing the existence of a conspiracy, both of which,

-10-

it contended, make Pretrial Services' recommendation for Munoz-Hernandez' detention even more persuasive.  See Tr. at 9:18-10-7 (Meyers).  The Court inquired what connections Munoz-Hernandez has in Mexico aside from his son and partner, C. Munoz, who are now back in the United States. See Tr. at 11:1-3 (Court).  The United States replied that Munoz-Hernandez still has three siblings and both of his parents in Mexico.  See Tr. at 11:4-9 (Meyers).

Munoz-Hernandez clarified that C. Munoz is a citizen of the United States, as is their son together, and that she was only in Mexico to take care of her ailing mother, but has now returned to Albuquerque to live here permanently.  See Tr. at 11:20-12:5 (Khalsa).  He also stated that his community is here and that he plans to return to being self-employed as an automobile painter upon his release, as he still has all of the equipment that he collected in his business before being arrested in this case.  See Tr. at 12:18-13:2 (Khalsa).  In response to the Court's inquiry why Munoz-Hernandez was not working as an automobile painter when he was arrested in connection with the drug trafficking conspiracy, Munoz-Hernandez explained that he was working almost up until his arrest, but had run into a problem with the landlord and stopped working shortly before the arrest. See Tr. at 13:8-13; 16:2-7 (Khalsa).  Munoz-Hernandez argued that, while he does have a history of failures to appear, there is no correlation between those failures to appear, for minor trafficking charges, and his being a flight risk in this case, because he eventually took care of all of his failures to appear in the past, often with them being resolved in his favor.  See Tr. at 14:2-20 (Khalsa). Thus, he contended, any worry the Court may have about his being a possible flight risk can and should be cured by allowing him to be placed in the custody of La Posada Halfway House with GPS monitoring.  See Tr. at 14:19-15:1 (Khalsa).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant may

be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g) **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

-12-

> (4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and  circumstances of the crime charged; (ii) the weight of the evidence

against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

## THE DISTRICT COURT'S STANDARD OF REVIEW

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order.  18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir.1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## ANALYSIS

Based on the nature of the Indictment's charges, there is a presumption that Munoz-Hernandez is a flight risk, as well as a danger to the community and to others.  In the face of that presumption, Munoz-Hernandez has met his burden of production to show evidence that he is not a flight risk or danger to the community; however, the United States has shown, by a preponderance of the evidence, that Munoz-Hernandez is a flight risk.  The Court concludes that there is no condition or combination of restrictions that would reasonably assure his appearance or the safety of the community.  See 18 U.S.C. § 3142(e).  The Court therefore denies Munoz-Hernandez' Appeal and affirms Judge Scott's Order Denying Defendant's Motion for Bail Review.

## I.     THERE IS A PRESUMPTION OF DETENTION.

The parties do not dispute that a presumption of detention applies under 18 U.S.C. § 3142(e). The charge that Munoz-Hernandez faces in Count 1 for violation of 21 U.S.C. § 846, conspiring to distribute fifty grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and B(1)(B), triggers this presumption under 18 U.S.C. § 3142(e)(3)(A).  See Indictment at 1-2.  Munoz-Hernandez faces a minimum of ten-years imprisonment for this charge based on the alleged amount of drugs, see 21 U.S.C. § 841(b)(1)(A)("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."),  and 18 U.S.C. § 3142(e)(3)(A) provides a presumption of detention for this drug offense when "a maximum term of imprisonment of ten years or more is prescribed,"  18 U.S.C. § 3142(e)(3)(A).  Thus, the presumption of detention applies.

## II.    THE COURT CONCLUDES THAT MUNOZ-HERNANDEZ IS A FLIGHT RISK.

The Court concludes that Munoz-Hernandez should be detained pending trial.  The Court concludes that Munoz-Hernandez has met his burden of production in the face of the statutory

presumption favoring detention. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced."). While, given the restrictive conditions Munoz-Hernandez proposed, he has met his burden of production in response to the presumption, the presumption of detention "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court further concludes that, while the United States has not met its burden of showing, by clear-and-convincing evidence, that Munoz-Hernandez presents a danger to the community, it has shown, by a preponderance of the evidence, that Munoz-Hernandez presents a risk of flight. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). The Court also concludes that no condition or combination of conditions will reduce to an acceptable level the risk of Munoz-Hernandez's flight.

The United States has alleged that Munoz-Hernandez is a flight risk, because his prior history shows that he has failed fourteen times to appear in court to respond to charges against him. The grand jury issued an Indictment charging Munoz-Hernandez with the following Counts: (i) Count 1 - conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; and (ii) Counts 25 - use of a telephone to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b). See Indictment at 1-2, 8-9. The United States seeks forfeiture of "at least $15,000,000 in U.S. currency" from Munoz-Hernandez and his co-Defendants. Indictment at 11. Based on the contents of the Indictment, the scope and scale of this drug organization is significant, and more substantial than many of the drug crimes which the Court handles. Based on Munoz-Hernandez' charge in Count 1, because the conspiracy alleges distribution of large amounts of drugs, conviction on this charge carries a minimum sentence of ten-years imprisonment.

While the majority of Munoz-Hernandez' family, including all of his children and his partner, C. Munoz, currently live in Albuquerque, he still has relatives, his parents and three siblings, that live in Mexico.  Although he states that he is not close with his family in Mexico, he still keeps in contact with them and is a citizen of Mexico.  While he states that his significant ties are to New Mexico, where his children and C. Munoz reside, he may conclude that it is in his best interest to flee to Mexico in light of the criminal charges he faces and the ten-years minimum imprisonment for Count 1.  His parents or siblings might shelter him there.  Moreover, C. Munoz, just returned from living in Mexico for some time while she was taking care of her mother, and Munoz-Hernandez' and her son lived with her in Mexico.  Another of Munoz-Hernandez five children has resided in Mexico in the past.  The fact that New Mexico runs along the Mexican border increases the risk of flight to Mexico and decreases the ability of law enforcement officers to timely respond to a defendant's flight, even if the Court were to require Munoz-Hernandez to wear a GPS device during his release.

Munoz-Hernandez' history of failing to appear for court indicates to the Court that he is a substantial flight risk.  Although Munoz-Hernandez has put forth explanation for four of his failures to appear for court when required, the fact that Munoz-Hernandez has fourteen failures to appear in his record gives the Court substantial concern.  Seeing one failure to appear on a suspect's record gives the Court pause when thinking of the possibility that a suspect may flee the Court's jurisdiction.  Seeing fourteen, however, even if all fourteen have been resolved, shows a pattern of inability to conform to a court's rulings and requirements at best, and substantial certainty that Munoz-Hernandez will flee to Mexico and not appear for trial at worst.  Thus, while it may be possible for the Court to impose conditions that would at some level reduce the risk of Munoz-Hernandez' flight, it is not convinced that it could impose conditions that would reasonably assure

his appearance if released.

A.    **MUNOZ-HERNANDEZ IS A FLIGHT RISK.**

The Court finds, by the preponderance of the evidence, that Munoz-Hernandez is a flight risk.   If convicted of the conspiracy alleged in Count 1, he faces a minimum ten years' imprisonment.  Munoz-Hernandez has been indicted, and the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d at 1046.   Munoz-Hernandez has admitted that the United States has disclosed evidence of six to nine telephone calls implicating his guilt in this conspiracy.   The allegations in the case involve conduct that is tied to Mexico, including connections to the Sinaloa Cartel.   While Munoz-Hernandez has significant ties to the Albuquerque area, he also still has family in Mexico, and his partner C. Munoz and her son have traveled there very recently.   Finally, Munoz-Hernandez' history of fourteen failures to appear may be enough, on its own, for the Court to find by a preponderance of the evidence that his is a substantial flight risk.   Because of these considerations, the Court finds by a preponderance of the evidence that Munoz-Hernandez is a flight risk.

1.    **The Nature and Circumstances of the Crimes Charged Demonstrate Munoz-Hernandez Is a Flight Risk.**

Count 1 charges Munoz-Hernandez with conspiracy to distribute at least 50 grams and more of methamphetamine, 5 kilograms and more of cocaine, and 100 kilograms and more of marijuana. Conviction of this charge carries a statutory minimum of ten-years imprisonment and a maximum sentence of life imprisonment.  See 21 U.S.C. § 841(b)(1)(A) ("[S]uch person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .").  In the face of such a lengthy term of imprisonment, and the evidence against him, Munoz-Hernandez might be

tempted to flee to Mexico rather than spend a good portion of his life in an American prison. This factor weighs in favor of detention.

> ### 2.    Munoz-Hernandez's History and Circumstances Show He Is a Flight Risk.

Munoz-Hernandez's history and characteristics cut both ways, but offer further support for finding that he is a flight risk. Some of his characteristics demonstrate ties to the community. Munoz-Hernandez' five children and partner, C. Munoz, are all United States citizens and reside in Albuquerque. He admits, however, that his parents and three of his siblings still live in Mexico. He owns a home and, until just before his arrest, operated an automobile painting business here in New Mexico. He has no criminal history related to narcotics trafficking, and no evidence of prior alcohol or drug abuse.

On the other hand, while Munoz-Hernandez is a permanent resident of the United States, he is a citizen of Mexico. In addition, his current partner and mother of his youngest son, C. Munoz, just returned from living in Mexico, where she was caring for her mother while their son lived with her and attended school in Mexico. One of Munoz-Hernandez' other children, although a United States citizen, has resided primarily in Chihuahua, Mexico.

Most importantly, while Munoz-Hernandez has been charged with mostly traffic violations, and one misdemeanor for shoplifting, included within Munoz-Hernandez' record are fourteen failures to appear. See Report at 4-5. Although Munoz-Hernandez provided explanation for the most recent failure to appear, that he had thought the state court continued his hearing, and stated that he was not given notice of two others, because of a change of address, he could not provide adequate explanation for the others -- assuming any explanation of fourteen failures to appear could ever be adequate. All of these fourteen failures to appear seem to have been resolved, many with

dismissals in his favor.  Munoz-Hernandez appeared in court voluntarily for at least two of the warrants that were issued for his failure to appear pursuant to a special program implemented at the Metropolitan Court, which dismisses bench warrants if the person for whom the warrant is issued shows up voluntarily on a certain day.  Nevertheless, fourteen failures to appear shows, at best, a disregard for a court's requirements and rules, and certainly is strong evidence that the trend of failing to appear for court will continue if not detained in this case.  The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment.  The Court also can see, however, that it is also more likely that a defendant will not show up for court purposefully in the face of a lengthy sentence, if he had previously thought about fleeing the jurisdiction when the defendant only faced a traffic violation.  In this case, the Court would find it hard to believe that, if Munoz-Hernandez resolved to flee the jurisdiction to Mexico, he would later change his mind and show up voluntarily to face a charge for ten-years imprisonment and a warrant for fleeing while on bail.

In sum, by a preponderance of the evidence, Munoz-Hernandez is a flight risk given the serious penalties he faces, his ties to Mexico, and fourteen prior failures to appear in his history. Munoz-Hernandez has significant reason to abscond and avoid incarceration, and the ties to Mexico makes it possible for him to do so easier -- both physically and psychologically -- than many other defendants.  Additionally, while he successfully met his burden of production in the face of the presumption of detention, the Court believes that presumption remains a relevant factor and that the presumption weighs in favor of detention.  See, e.g., United States v. Moreno, 1994 WL 390091, at *2 ("The presumption reflects Congress' findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug

trade."). The Court is concerned that the trend of Munoz-Hernandez' failures to appear in the past will continue in this case, and especially concerned in light of the penalties he faces in this case, compared with the possible penalties for mostly traffic violations in the past. In the end, the Court is convinced that the temptation will be too much.

## III.   THE UNITED STATES HAS NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT MUNOZ-HERNANDEZ IS A DANGER TO THE COMMUNITY.

Because the United States has shown probable cause supporting Munoz-Hernandez's federal drug charges, the statutory presumption that Munoz-Hernandez poses a danger to the community is triggered. Munoz-Hernandez has met his burden of production in response to that presumption. Munoz-Hernandez has put forth evidence that he has always financially supported his five children, he has been gainfully employed as an automobile painter, including owning his own business, and can likely obtain gainful employment upon release. Additionally, he has not been charged or arrested for any felonies in the past, as he has only been charged with traffic violations and once with shoplifting. There is no evidence that he has any history of alcohol or drug abuse, or any violent behavior. The Court notes that, even with Munoz-Hernandez putting forth this evidence, the presumption remains a factor for the Court to consider in making its ultimate determination regarding detention. See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.").

The scope of the alleged drug trafficking activity is particularly concerning to the Court. Based on the United States' allegations, however, while it appears that Munoz-Hernandez participated in the conspiracy, which is a serious wrong, he played only a minor role in this conspiracy, as he is alleged to have participated in only six to nine phone calls on one day with his

-21-

co-Defendants.  While the number of calls alone does not reasonably mean that he played a minor role -- a Kingpin of a drug organization might be high up enough and smart enough to avoid all calls -- the United States does not deny that its evidence suggests Munoz-Hernandez was a minor player.  These few telephone calls on one day do not show by clear-and-convincing evidence that there is a high risk that Munoz-Hernandez will continue to engage in drug trafficking.  See United States v. Pina-Aboite, 97 F. App'x 836, 836 (10th Cir. 2004)(unpublished)(citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir.1989))(recognizing that the 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community").  Given the evidence his minor role, isolating him at the halfway house likely would break his ability to work with his co-Defendants to traffic in drugs.  While the risk cannot be reduced to zero, the combination of proposed conditions would reduce that risk to acceptable limits.  The Court, therefore, does not find that the United States met its burden to prove by clear and convincing evidence that Munoz-Hernandez is a danger to the community.

### III.   THE COURT BELIEVES IT CANNOT REDUCE MUNOZ-HERNANDEZ' RISK OF NONAPPEARANCE TO AN ACCEPTABLE LEVEL EVEN WITH RESTRICTIVE CONDITIONS.

Munoz-Hernandez has proposed that, to help mitigate his risk of nonappearance and danger to the community, the Court release him to La Posada Halfway House with GPS monitoring.  While these conditions would to some extent mitigate his risk of nonappearance, the Court does not believe that they would do so at an acceptable level to reasonably assure his appearance.  The Court has had difficulty in the past with defendants who are allegedly involved in a criminal organization becoming fugitives if the Court decides to release them, even when the defendants are on particularly restrictive conditions.  Munoz-Hernandez' ties to Mexico give him the resources, and

the sentence that he faces for the allegations against him give him significant incentive, to flee the country. The Court strives to impose restrictive conditions on defendants when doing so is feasible in lieu of detaining defendants. The Court must remain conscious, however, that it sits in a border district that adjoins the United States-Mexican border. A defendant has a higher likelihood of escaping to a foreign country in this district than many other districts in the United States; people can cross the border before GPS monitoring can alert authorities and do much good.

The Court is concerned that this case, based on its complexity, will not likely proceed to trial until 2013. That amount of time is a long time to be in pretrial detention or on pretrial release. Munoz-Hernandez has some family connections that could help facilitate flight to that country, and his fourteen failures to appear give the Court pause whether he would repeat this trend. In the end, the risk of flight is too great to overcome. Consequently, the Court will order that Munoz-Hernandez be detained pending trial.

**IT IS ORDERED** that: (i) the Defendant's Appeal of Detention Order, filed June 28, 2012 (Doc. 217), is denied; (ii) the Honorable Robert Hayes Scott, United States Magistrate Judge's Detention Order Pending Trial, filed February 1, 2012 (Doc. 89), is affirmed; and (iii) Defendant Antonio Munoz-Hernandez shall be detained pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Reeve L. Swainston
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Kirtan Khalsa
Albuquerque, New Mexico

*Attorney for the Defendant*